IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BOBBY N. McCARTY                                                                              PLAINTIFF

VS.                                                        Civil Action No. 3:06-cv-00177-HTW-LRA

CANADIAN NATIONAL/
ILLINOIS CENTRAL RAILROAD                                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before this court is the defendant's motion to exclude any expert opinion stating that plaintiff's carpal tunnel syndrome was caused in whole or in part by his work activities for Illinois Central Railroad [docket # 46]. In conjunction with this motion, Illinois Central Railroad also moves this court to bar the expert testimony of Drs. William Thomas [docket # 49] and Michael Shinnick [docket # 51] under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

### I. Factual and Procedural Background

Plaintiff Bobby N. McCarty, a former employee of Illinois Central Railroad ("ICR"), filed a complaint pursuant to the Federal Employers Liability Act ("FELA"), Title 45 U.S.C. § 51,[1] to recover damages for workplace injuries. Specifically, plaintiff alleges

---

[1]The Federal Employees' Liability Act ("FELA") (45 U.S.C. A. § 51) provides in pertinent part: Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect on insufficiency, due to its negligence, in its cars, engines, appliances, machinery . . . or other equipment.

that he developed carpal tunnel syndrome[2] due to the performance of routine tasks associated with his employment for ICR.

Plaintiff was hired by the Gulf Mobile & Ohio Railroad in January 1963. In 1972, McCarty began working for ICR when it merged with Gulf Mobile & Ohio Railroad. Plaintiff worked various jobs with ICR's track department during his tenure with the company. In 1997, three years before becoming a track inspector, McCarty was diagnosed with Reiter's Syndrome, and later rheumatoid arthritis, systematic polyarthritis, and tenosynovitis. McCarty eventually assumed the position of track inspector in 2000. He subsequently retired from ICR on February 26, 2002. On March 6, 2002, McCarty completed an application for sickness benefits to the United States Railroad Retirement Board ("RRB"). McCarty stated on the application that he was not applying for sickness benefits because of an on-duty injury or work-related illness. The medical condition upon which he applied for RRB benefits was "bilateral carpal tunnel syndrome."

## II.  Standard Under FLEA

Under FELA, railroad companies are liable in damages to any employee who suffers injury due to the railroad's negligence. Title 45 U.S.C. § 51. To recover under FELA, plaintiff must prove the common-law elements of negligence, including duty, breach, foreseeability, and causation. McCarty brought his claim against ICR under FELA which provides in pertinent part that:

---

[2] Carpal tunnel syndrome. A condition resulting from pressure on the median nerve as it traverses the carpal tunnel (a deep space in the palmar or palm surface of the wrist); usually by fibers of the traverse carpal ligament. The condition is characterized by pain, tingling, burning, numbness, etc. in the areas supplied by the nerve, i.e., in the skin of the palm, fingers, wrist, etc. There may also be swelling of the muscles of the hand, especially those at the based of the thumb. 1 Schmidt's Attorney's Dictionary of Medicine, (MB) No.28, at C-76 (Feb. 1995).

every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable for damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. 45 U.S.C. § 51.

The United States Court of Appeals for the Fifth Circuit has stated that "[t]o prevail under the Act, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." *Smith v. Med. & Surgical Clinic Ass'n*, 118 F.3d 416, 419 (5th Cir.1997).

### III. *Daubert*

On November 13, 2007, this court conducted an evidentiary hearing where it heard arguments from both ICR and McCarty regarding both Dr. Thomas's and Dr. Shinnick's qualifications under Rule 702. The admissibility of expert witness testimony is governed by Rule 702 of the Federal Rules of Evidence,[3] applied under the jurisprudence established in *Daubert* v. *Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Supreme Court in *Daubert*

---

[3] Rule 702 of the Federal Rules of Evidence provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.

explained that Rule 702 assigns the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. *Daubert,* 509 U.S. at 589. This role requires the district judge to undertake a two-part analysis. The district judge must first determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. Secondly, the district judge must determine whether the reasoning or methodology can be properly applied to the facts in issue: that is, whether it is relevant. Id. at 592-93.

"[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and therefore, are reliable." *Moore v. Ashland Chemical, Inc.* 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The Supreme Court in *Daubert* identified several non-exhaustive factors that courts may consider in evaluating the reliability of an expert's testimony: (1) testability; (2) error rate; (3) peer review and publication; and (4) general acceptance. These four factors apply most comfortably in cases involving scientific testimony, but may not assist in other cases, particularly those involving non-scientific experts. See *Kumho Tire*, 526 U.S. at 150-152. Accordingly, the factors are merely illustrative rather than exhaustive, and "considerable leeway" is conferred upon the trial court in deciding which tests or factors to use to assess the reliability of an expert's methodology. Id.

### IV. Analysis

**A. Admissibility of Dr. William Thomas's Testimony**

Dr. William Thomas examined plaintiff and performed carpal tunnel release

surgeries on both of plaintiff's wrists. At the *Daubert* hearing, Dr. Thomas expressed an opinion that plaintiff's work activities caused his carpal tunnel syndrome. Defendant argues that Dr. Thomas's opinion is unreliable because he did not conduct or perform any test to determine the relationship between McCarty's work for ICR and his development of bilateral carpal tunnel syndrome.

Dr. Thomas's proposed testimony, which seeks to prove causation, fails the first part of the test because his opinion is not based on any discernable scientific methodology. Dr. Thomas, instead, relies on "differential diagnosis" to opine that McCarty's work activities for ICR is the culprit for his injuries. On the present record, this court must conclude that Dr. Thomas's conclusions can only be characterized as his own subjective beliefs as to the cause of McCarty's carpal tunnel syndrome. Dr. Thomas admitted that he has not reviewed literature on the causes of carpal tunnel syndrome in nearly 10-15 years and was unable to cite any peer-reviewed studies supportive of his opinion. Further, Dr. Thomas has not conducted any studies or analyses to substantiate his views, nor has he attempted to demonstrate that his views have gained general acceptance in the scientific community; instead, Dr. Thomas's conclusions are based simply on his own observations, which are insufficient in this case to establish that his views are corroborated by the scientific method. *See O'Conner v. Commonwealth Edison Co.*, 13 F3d 1090, 1106-07 (7th Cir. 1994) (holding that a physician's expert opinion testimony that he could tell whether a particular cataract was caused by radiation just by looking at it was inadmissible because no evidence was offered to prove radiation-induced cataracts could be identified by mere observation).

5

Although the evidence required to establish causation in a FELA action is less than that required in an ordinary negligence action, the plaintiff must still make some showing that a casual relation existed. *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Dr. Thomas's proposed testimony is simply inadequate to raise a genuine issue as to causation. Dr. Thomas's proposed testimony gives a result-oriented opinion, but provides no explanation of the facts or reasoning used in formulating that opinion. Dr. Thomas merely states that his conclusion is based on his examination of McCarty and the resulting surgeries, his medical records, and his professional experience. In sum, Dr. Thomas does not provide this court with any adequate foundation to opine that McCarty's work activities caused his injuries. Accordingly, since Dr. Thomas's proposed testimony does not satisfy the requirements of Rule 702, *Daubert* and its progeny, this court hereby excludes his testimony as to causation.

The court finds, then, that as a treating physician, Dr. Thomas can testify and explain his diagnosis of plaintiff's condition and his opinion that the treatment afforded plaintiff was reasonable or necessary. Dr. Thomas's explanation for the cause of plaintiff's condition, however, is inadmissible and may not be considered because it is not supported by sufficient validation to satisfy the *Daubert* test.

**B.  Admissibility of Dr. Michael Shinnick's Testimony**

Plaintiff submitted the report of ergonomist, Michael Shinnick, Ed.D., of the Dynamics Research Group, Inc. who investigated the work conditions at ICR and formed an opinion as to McCarty's risk of developing carpal tunnel syndrome. In

6

preparing his report and testimony for this litigation, Dr. Shinnick read various depositions, including McCarty's; visited McCarty's work station on December 14, 2006, where he weighed, measured and photographed a track inspector's truck and tools; reviewed McCarty's medical records; and reviewed various articles from ergonomic literature.  Dr. Shinnick ultimately opined that ICR had failed to provide McCarty with a reasonably safe place to work.

Dr. Shinnick seeks to inform the trier of fact that: (1) a worker is exposed to escalating risk of carpal tunnel syndrome due to increased loading activities and greater exposure to vibrating equipment; (2) since the 1980's the Occupational Safety and Health Administration ("OSHA")  has put in place guidelines and recommendations on ergonomic safety programs; (3) Mr. McCarty was exposed to ergonomic risk factors throughout his employment; and (4) ICR did not meet industry standards with an adequate ergonomic program in regards to McCarty.

Dr. Shinnick also seeks to testify as to foreseeability.  In his report, Dr. Shinnick states that ICR "should have known of the occupational risk factors for carpal tunnel syndrome so that they could have taken ergonomic steps to prevent its employees from developing occupational carpal tunnel syndrome."

Defendant objects to the admission of Dr. Shinnick's testimony on the basis that his opinion is unreliable.  Shinnick's admits that he is not aware of any minimum threshold or level of exposure to the "risk factors" he identifies in his report.  In that report, Dr. Shinnick stated that McCarty was exposed to risk factors for carpal tunnel syndrome as he performed his job with ICR.  Dr. Shinnick fails, however, to present any evidence as to the amount of pressure or repetition necessary to cause plaintiff's

injuries. Dr. Shinnick has not performed any studies or investigations as to plaintiff's method of performing his job, or as to what reduction in the length of time or number of repetitions of performing his job would be needed to insure that plaintiff did not develop carpal tunnel syndrome. Therefore, the court agrees with defendant in holding that Dr. Shinnick's proposed testimony does not satisfy the requirements of *Daubert*.

The court also holds that Dr. Shinnick's opinion as to foreseeability is not reliable under *Daubert*. Dr. Shinnick has failed to cite any studies that scientifically demonstrate that McCarty's working conditions were associated with carpal tunnel syndrome. Therefore, it would be unreasonable to expect ICR to have foreseen that the work functions it detailed for McCarty would have contributed to his carpal tunnel syndrome.

## V.  Conclusion

For the foregoing reasons, this court hereby wholly excludes the testimony of Dr. Shinnick. The court also excludes the testimony of Dr. Thomas on the matter of causation.

**SO ORDERED**, this the 26th day of February, 2008.

s/ **HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:06-cv-177 HTW-LRA